Minute Order Form (06/97)

JS6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 112 | **DATE** | 9/13/2001 |
| **CASE TITLE** | ST. PAUL FIRE vs. ESTATE OF GENESIS BRYANT, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction [6-1]. St. Paul's motion to strike is moot. [15-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 17 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 17 |
| ✓ | Mail AO 450 form. | | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | FILED FOR DOCKETING 01 SEP 17 PM 5: 16 | date mailed notice | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
        Plaintiff,

vs.

ESTATE OF GENESIS BRYANT, ESTATE
OF KRYSTAL POWE, MALCOLM BRYANT,
WAYNE OSBORNE, and ALBERT GARDNER,
        Defendants.

01 C 112

Judge Ronald Guzmán

## MEMORANDUM OPINION AND ORDER

    Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul") is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota. Defendants, Malcolm Bryant, Wayne Osborne, and Albert Gardner are individuals residing in Chicago, Illinois. Defendants Genesis Bryant and Krystal Powe are deceased. The administrators of their estates, Richard Bryant and Julie Powe, respectively, both reside in Chicago, Illinois. St. Paul brought a declaratory judgment action under 28 U.S.C. §§2201 and 2202 against all Defendants seeking to establish that St. Paul is not liable to Defendants for an accident that occurred on July 29, 2000. Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6). For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion to dismiss pursuant to Rule 12(b)(1) because no actual controversy exists between the parties.

## FACTS

    On July 29, 2000, a tragic accident occurred on I-90/94 in Chicago, Illinois. (Compl. ¶ 10.) On that day, Defendants were working for the City of Chicago's Mayor's Office for Special Events delivering "jumping jacks" to neighborhood festivals. (Mot. Dismiss ¶ 1.) Defendant Albert Gardner was driving with Defendants Ms. Bryant, Ms.

1

Powe, Mr. Bryant, and Mr. Osborne on I-90/94 ("Gardner vehicle"). (Compl. ¶ 10.) A Mack truck towing a dump trailer driven by Robert Walton was just in front of them. (*Id.* ¶ 11.) Carter's Excavating & Grading ("Carter") owned the truck. (*Id.*) As the truck went under the Van Buren Street overpass, the bed of the dump trailer struck the overpass and detached from the truck. (*Id.* ¶ 12.) The bed landed on the Gardner vehicle, killing Genesis Bryant and Krystal Powe, and seriously injuring Albert Gardner, Malcolm Bryant, Wayne Osborne. (*Id.*) Subsequently, Defendants filed suit in the Circuit Court of Cook County against Robert Walton and Carter's Excavating & Grading seeking damages ("underlying action").

Ranger Insurance Company ("Ranger") insured the Carter truck for five million dollars in liability coverage. (*Id.* ¶ 14.) In *Ranger Ins. Co. v. Carter's Excavating & Grading,* Case No. 01 CH 410, Ranger filed an interpleader action and deposited the entire five million dollars of insurance benefits with the Clerk of the Circuit Court of Cook County. (*Id.* ¶ 15.) To date, there has been no adjudication of liability in the underlying lawsuit filed by Defendants. (Mot. Dismiss ¶ 6.)

The City of Chicago's Mayor's Office of Special Events had leased the ill-fated Gardner vehicle from Budget Rent-A-Car. (Compl. ¶ 17.) St. Paul insures the City of Chicago with both a Primary Policy and an "Umbrella Excess Liability Protection" policy. (*Id.* ¶¶ 17, 21.) On November 27, 2000, Defendants Malcolm Bryant, the Estate of Genesis Bryant, Albert Gardner, and Wayne Osborne sent a letter to St. Paul pursuant to the statutory notice requirement of 215 ILCS 5/143a-2(6).[1] (Pl. Br. Opp'n at 4.) In this letter Defendants stated that "[y]our policy and the Statute controlling under insured motorist coverage [215 ILCS 5/143a-2] are silent regarding whether an interpleader filing is an offer of settlement. It is our position that [Ranger] has clearly indicated a

---

[1] 215 ILCS 5/143a-2(6) reads: Subrogation against under insured motorists. No insurer shall exercise any right of subrogation under a policy providing additional uninsured motorist coverage against an under insured motorist where the insurer has been provided with written notice in advance of a settlement between its insured and the under insured motorist and the insurer fails to advance a payment to the insured, in an amount equal to the tentative settlement, within 30 days following receipt of such notice.

willingness to offer all of their insurance benefits to the five claimants. The claimants' injuries [Defendants] clearly exceed the $5 million dollars of insurance benefits available to Carter's Excavating." (Pl. Br. Opp'n Ex. C.)

On December 7, 2000, Defendant Estate of Krystal Powe sent its statutory notice to St. Paul. (*Id.* at 4.) In this letter, Estate of Krystal Powe stated that it was "hereby making a claim for the injuries and losses which the Estate has sustained, pursuant to the under insurance provisions of the applicable insurance policies which your company issued to the City of Chicago." (*Id*, Ex. D.) On January 5, 2001, St. Paul filed its Complaint for Declaratory Judgment. (*Id.* at 4.) On February 12 and 13, 2001, Defendants sent letters to St. Paul withdrawing the statutory notice made earlier. (*Id.*)

St. Paul seeks a declaration from this court holding that it is not liable to Defendants under either of the policies issued to the City of Chicago because the Carter vehicle is not considered an under insured motorist.[2] (*Id.* ¶¶ 28, 29.) Defendants have moved to dismiss the declaratory judgment action for lack of subject matter jurisdiction or, alternatively, because St. Paul has not stated a claim upon which relief can be granted. For the foregoing reasons, Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.[3]

---

[2] According to the terms of St. Paul's primary policy, it will compensate those persons protected under its policy [it is not contested by St. Paul that Defendants are covered under the policies held by the City of Chicago] for injuries resulting from the fault of an uninsured or under insured vehicle. (Compl. ¶ 18.) The policy defines an under insured vehicle as one that has enough liability insurance as required by law, but has less than the limit of coverage provided under the policy agreement. (*Id.* ¶ 19.) St. Paul contends that since the Carter vehicle has $5 million in liability insurance coverage, which is more than the $1 million limit in uninsured motorist coverage for the Gardner vehicle, St. Paul is not liable for the under insured motorist coverage under the Primary Policy. (*Id*, ¶ 20.) Furthermore, since the Primary Policy does not provide coverage, the Excess Policy does not provide coverage. (*Id.* ¶ 29.)

[3] Since Defendant's motion to dismiss is granted for lack of subject matter jurisdiction, their motion to dismiss for failure to state a claim is moot. Similarly, Plaintiff's motion to strike has no bearing upon this opinion, and is rendered moot.

3

## DISCUSSION

The Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, gives courts of the United States discretionary power to issue declaratory judgments. *Atlanta Int'l Ins. Co. v. Atchison, Topeka, and Santa Fe Railway Co.*, 938 F.2d 81, 83 (7th Cir. 1991). However, for a court to exercise this power there must be an actual controversy.[4] 28 U.S.C. § 2201. Defendants contend that no actual controversy exists yet between them and St. Paul because there has not been any determination of damages from the underlying litigation filed in the Circuit Court of Cook County.

When a defendant seeks to dismiss under Rule 12(b)(1), any inference drawn must be favorable to the plaintiff's complaint. *United Milk Products Co. v. Michigan Avenue National Bank of Chicago*, 401 F.2d 14, 17 (7th Cir. 1968). The well-pled allegations contained in the complaint are accepted as true. *National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir. 1964). Tendering matters outside the pleadings does not turn a Rule 12(b)(1) motion into a summary judgment motion. *Crawford v. United States*, 796 F.2d 924, 927-28 (7th Cir. 1986).

In *Atlanta Int'l*, the Seventh Circuit dealt with a case nearly identical to this case. In *Atlanta Int'l*, the Atchison, Topeka, and Santa Railway Company ("Santa Fe") was insured by Atlanta International Insurance Company ("Atlanta") against claims arising out of Santa Fe's railroad operations. *Atlanta Int'l*, 938 F.2d at 82. In 1989, Santa Fe was found to be in violation of the Sherman Act, 15 U.S.C. § 1, for conspiring with other railroads in restraint of trade. *Id.* Santa Fe was ordered to pay $750,100,000 in damages. *Id.* After the verdict, Santa Fe sent letters to its nearly 170 general liability insurers notifying the insurers of this verdict and noted that there was a possibility for settlement

---

[4] "A 'controversy' in this sense must be one that is appropriate for judicial determination…A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot…The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interest…It must be a real and substantial controversy admitting of specific relief through a degree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-1 (1937).

4

discussions in the near future. *Id.* Santa Fe also requested that the insurers give their views as to the terms of the policies held by them. *Id.* When Atlanta received their letter it brought suit under the Federal Declaratory Judgment Act to relieve itself from any potential coverage provided in the insurance policy issued to Santa Fe. *Id.*

The Seventh Circuit affirmed the District Court's dismissal of Atlanta's request for a declaratory relief because no actual controversy existed to warrant a declaratory judgment. *Id*, at 84. The District Court held that the mere rendering of a judgment against the insured (Santa Fe) by itself does not create an actual controversy with the insurer (Atlanta). *Id*, at 83. The District Court relied upon an Illinois Supreme Court decision in *Gibraltar Ins. Co. v. Varkalis*, 46 Ill.2d 481, 263 N.E.2d 823, 826 (1970) for the proposition that "no actual controversy arises among the parties until such time as the issuing company is called upon to either pay or defend a claim on behalf of its insured under the terms of the policy in question." *Id.* The Seventh Circuit supported the use of the Illinois Supreme Court case by the District Court. *Id.* The Seventh Circuit further stated that "a party bringing a declaratory action must show an actual controversy and a direct injury or threat of injury that is 'real and immediate, not conjectural or hypothetical. *Id*, (quoting *Koch Refining v. Farmers Union Cent. Exch. Inc.*, 831 F.2d 1339, 1353 (7th Cir. 1987), cert. denied, *485 U.S. 906*). Since the requisite injury-a claim for payment by Santa Fe-neither occurred nor was immediately threatened by Santa Fe. *Id.*

In this case, Defendants sent out letters to St. Paul to comply with the statutory requirements of 215 ILCS 5/143a-2. However, they withdrew their requests for St. Paul to step in and either pay or take part in the case. (Mot. Dismiss ¶ 13.) It is not clear from the statute whether Defendants can withdraw their statutory notice or whether St. Paul became bound to act after the thirty day time period elapsed. If Defendants can withdraw the statutory notice then *Atlanta Int'l* is controlling because the insurer, St. Paul, has not been asked by Defendants to do anything as of yet. If and when Defendants make a

demand for payment or otherwise takes steps that make it sufficiently certain that St. Paul will be called upon to pay under the policy, then there will exist an appropriate setting for determining whether St. Paul is liable under the Primary Policy with the City of Chicago. *See Atlanta Int'l*, 938 F.2d at 84.

Since it not clear whether an insured can withdraw statutory notice and since all inferences must be drawn favorable to St. Paul, this Court will assume that such statutory notice cannot be withdrawn and that a demand has been made upon St. Paul.[5] In this case, however, whether a demand was made upon St. Paul to act does not effect the dismissal of St. Paul's complaint for lack of subject matter jurisdiction.

Even if St. Paul is bound to act, as they contend, under Illinois law there is still no controversy yet until the underlying litigation is completed.[6] The Illinois Supreme Court in *Cummins v. Country Mutual Ins. Co.*, held that whether an at-fault motorist is defined as "under insured" is determined by comparing the amount of under insured-motorist coverage held by the injured party to the amount of coverage actually recovered from the at-fault driver. 178 Ill.2d 474, 485-6, 687 N.E.2d 1021, 1027 (1997). In *Cummins*, Country Mutual Insurance Company ("County Mutual") issued an under insured-motorist policy to Mr. Cummins in the amount of $50,000 per person and $100,000 per accident. *Cummins*, 687 N.E.2d at 1023. Mr. Cummins was involved in an accident with a motorist with identical insurance limits of $50,000 per person and $100,000 per accident. *Id.* Cummins received $35,000 from the at-fault driver with the rest going to injured passengers in the at-fault driver's vehicle. *Id.* When Cummins filed suit to recover the

---

[5] St. Paul has not offered any reason why the statutory notice cannot be withdrawn. Since the right of subrogation is "founded on principles of justice and equity, and its operation is governed by principles of equity, *Ness v. Ford Motor Co.*, 835 F.Supp. 453, 457 (N.D. Ill. 1993) (quoting *Remsen v. Midway Liquors, Inc.*, 30 Ill.App.2d 132, 174 N.E.2d 7, 12 (1961)), it seems more equitable to allow an insured to withdraw the statutory notice. In this case, if Defendants could not withdraw this notice, St. Paul could pay them $5 million for the rights to the underlying case, even though the amount of damages awarded in the underlying lawsuit could be greater than $5 million. This would result in a windfall for St. Paul as they would have bought low and then could sell high.

[6] By arguing that the statutory notice made by Defendants pursuant to 215 ILCS 5/143a-2 binds them, St. Paul concedes that Illinois law is applicable.

6

difference between the settlement and the $50,000 limit from Country Mutual's under insured-motorist coverage, Country Mutual filed a motion to dismiss arguing that the at-fault driver was not an "under insured" motorist because the limits of the at-fault driver's liability coverage were identical to Cummins' under insured-motorist coverage. *Id.* The Illinois Supreme Court denied Country Mutual's motion holding that the determination of whether a motorist is "under insured" must be made after the underlying litigation has ended. *Id*, 485-6. Since St. Paul is arguing that the Carter vehicle is not under insured, they must wait until the underlying litigation has been completed before that determination can be made.

Furthermore, it does not matter how St. Paul defines an "under insured motorist" because statutes in force at the time the insurance policy was issued are controlling. *Cummins*, 687 N.E.2d at 1025. Inserting a contrary or restricting provision in an insurance policy cannot circumvent the purpose of a statute. *Id*, at 1025-6 (quoting *Severs v. Country Mutual Ins. Co.*, 89 Ill.2d 515, 520, 434 N.E.2d 290 (1982). Any conflict between statutory and insurance policy provisions will be resolved in favor of the statutory provisions. *Id*, at 1026 (quoting *DC Electronics, Inc. v. Employers Modern Life Co.*, 90 Ill. App.3d 342, 348, 413 N.E.2d 23 (1980).

Thus, even though Defendants sent their statutory notice to St. Paul, which alerted them to the possibility of the demand for payment or action in the case, there has been no determination of damages in the Circuit Court case. St. Paul's argument for declaratory relief is based upon the premise that the Carter vehicle does not qualify as an under insured vehicle. (Compl. ¶¶ 15, 16.) This is pure speculation.[7] As was stated in *Cummins*, whether a vehicle qualifies as an "under insured vehicle" can only be determined after the underlying litigation ends and the amount actually received from the at-fault motorist (allegedly the Carter vehicle) can be compared to the amount of under

---

[7] In fact, the main purpose behind acquiring "under insured coverage" is to account for the situation where a defendant-tortfeasor does not have enough insurance coverage or assets to pay the judgment entered against him.

7

insured motorist coverage held by the City of Chicago.

St. Paul also argues that their under insured policy only requires them to pay if the amount of coverage of the at-fault driver (Carter) is less than the amount of under insured coverage held by Defendants (Compl. ¶¶ 19, 20.) Since Ranger deposited the entire five million dollars, St. Paul argues that each Defendant will receive "$1,000,000 in the aggregate." (Pl. Br. Opp'n at 13.) Thus, St. Paul's policies would not require them to pay. St. Paul assumes too much. It is unclear what each Defendant will receive. It is entirely possible that each Defendant will receive $1 million each in the underlying lawsuit, but it is also possible that one Defendant will receive $4,999,999 in the lawsuit, while the other four Defendants must share $1. Thus, any opinion offered as to whether St. Paul might be liable to Defendants based upon St. Paul's under insured insurance policies with the City of Chicago would be nothing more than an advisory opinion.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss for lack of subject matter jurisdiction (#6-1). St Paul's motion to strike is moot (#15-1).

SO ORDERED 9/13/01      ENTERED:

*Ronald A. Guzman*
Judge Ronald A. Guzman

8